UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE MATHENY, LINDA
WEIR and LOIS POWERS,

       Plaintiffs,

v.                                                                          Case No. 2:06-cv-00173
                                                                            HON. R. ALLAN EDGAR

KMART CORPORATION, a Michigan
corporation

       Defendant.

_____/

## MEMORANDUM

Plaintiffs Michelle Matheny, Linda Weir, and Lois Powers bring this wrongful

termination action against their former employer, defendant Kmart Corporation ("Kmart").

Plaintiffs allege that they were terminated in violation of the Age Discrimination in Employment

Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and in violation of Michigan's Elliott-Larsen Civil

Rights Act, Mich. Comp. Laws §§ 37.2101 *et seq.* ("ELCRA").

Kmart moves for summary judgment dismissal of Plaintiffs' claims [Court Doc. No. 33],

and Plaintiffs oppose the motion for summary judgment.  [Court Doc. No. 34].  After reviewing

the record in the light most favorable to Plaintiffs, the Court finds that Kmart's motion for

summary judgment will be **GRANTED**.

## I.      Background

### A.      Factual Background

The facts, seen in the light most favorable to the Plaintiffs, are as follows.  The Plaintiffs

are all former full-time employees of Kmart who were employed at Kmart's Sault Ste. Marie,

Michigan store.  Plaintiffs were three of five employees out of a total of seventeen full-time employees who were terminated due to a reduction-in-force ("RIF") in January of 2006.  Plaintiff Lois Powers was known as the "up-front lead" and supervised the check-out lanes and the customer service counter.  She had worked for Kmart since 2001.  Plaintiff Michelle Matheny worked the night shift in Kmart's replenishment department and had worked for Kmart since 1981.  Plaintiff Linda Weir was the lead associate in the electronics department and had worked for the company since 1986.

Kmart hired Brian Snyderworth as the "store coach" for the Sault Ste. Marie store in late 2005.  He began working in the Sault Ste. Marie store on December 6, 2005, but he had been employed by Kmart since 1989.  As the "store coach" Snyderworth was responsible for the overall management of the store, including all of its departments, the check-out area, and the replenishment department.  Snyderworth also had the authority to make all hiring and firing decisions.

At the end of December of 2005, Kmart decided to implement a workforce adjustment in the stores within the district containing the Sault Ste. Marie store.  The district coach for that district, Doug Horn, informed Snyderworth and other store coaches within the district that they would need to adjust their workforces in accordance with the sales volume of the store.  Kmart supplied the store coaches with specific Workforce Adjustment Guidelines ("Guidelines"), as well as a Ranking Sheet to aid the coaches in carrying out the workforce adjustment plan.  [Court Doc. Nos. 33-3, 33-4].  It is undisputed that pursuant to the Guidelines and Kmart's directives, Snyderworth needed to reduce his workforce by five full-time employees.

The Guidelines contained specific instructions on how each store coach was to rank the

-2-

employees in his or her store.  [Court Doc. No. 33-3].  They required the store coach to "rate each

associate based on four performance indicators" of customer service, teamwork, demonstrated

work habits, and effectiveness in position.  *Id.*; [Court Doc. No. 33-4].  The Guidelines cautioned

store coaches to perform the ratings analysis based on "observed, objective job-related

performance."  [Court Doc. No. 33-3].  The Guidelines directed that once all the full-time

associates were ranked, store coaches should then terminate the associates with the lowest

ranking scores.  They also warned that "[w]orkforce decisions must be based on objective job

related criteria and must not be based on race, color, religion, sex, national origin, age, or

disability."  *Id.*  The Ranking Sheet provided space for store coaches to apply a performance

appraisal number using the employee's prior performance appraisal.  The store coach was then

directed to provide ranking numbers in the four areas of customer service, teamwork,

effectiveness in position, and demonstrated work habits.  Snyderworth then calculated an average

score based on the five previous scores.  The Ranking Sheet then directed Snyderworth to

terminate the five lowest-ranked employees.

Although Snyderworth had only been at the Sault Ste. Marie store for three weeks, he

ranked the seventeen employees according to the four criteria.  *See* [Court Doc. No. 34-7].

Snyderworth created his initial rankings and then obtained input from his two assistant managers

regarding the initial rankings.  One of the assistant managers, Gabriela Koose-Behling, disagreed

with Snyderworth's initial rankings.  She convinced Snyderworth to retain Beverly Trumbley, a

fifty-five year old employee, and to terminate Carol Starnes, a fifty-two year-old employee whom

she believed was less reliable.  However, Koose-Behling agreed with Snyderworth's other

decisions, including the decision to terminate Plaintiffs.  [Court. Doc. No. 33-23, Deposition of

Ingrid Gabriela Koose-Behling ("Koose-Behling Dep."), pp. 10-12]. There is no evidence suggesting that the other assistant manager disagreed with Snyderworth's decisions. Using the performance appraisal score given by the prior store coach, it is undisputed that Powers, Weir, and Matheny were ranked in the bottom half of store employees even before Snyderworth took over. *See* [Court Doc. No. 34, p. 3].

After his discussion with his assistant managers, Snyderworth decided to terminate Lois Powers, Carol Starnes, Michelle Matheny, Jessica Gillotte, and Linda Weir. At the time of their termination, Powers was 62, Weir was 54, Matheny was 52, Starnes was 52, and Gillotte was 27. Snyderworth terminated four of the five oldest employees in the store. He retained Beverly Trumbley based on his assistant manager's suggestion, and she was the second oldest employee in the store at age 55. He also terminated the youngest employee in the store, Jessica Gillotte. The employees whom Snyderworth retained ranged in age from 34 to 55. Ten of the employees who were retained ranged from age 41 to age 51. [Court Doc. No. 34, p. 5]. Snyderworth testified that he did not know the ages of the Plaintiffs when he terminated them. [Court Doc. Nos. 33-20, 34-6, Deposition of Brian Snyderworth ("Snyderworth Dep."), p. 65]. Plaintiffs present no evidence disputing his contention.

In discussing why he rated Lois Powers differently than how the prior store coach rated her, Snyderworth testified that at busy times the checkout lines would occasionally back up and that Ms. Powers was not able to manage the front area effectively at those times. Snyderworth Dep., pp. 43-44. He also testified that the checkout lanes were "quite dirty" and that although they needed to be full of merchandise, he found lots of "holes" in the merchandise in the checkout lanes under Powers' supervision. *Id.* at 44.

-4-

Snyderworth also testified regarding why he rated Matheny lower than the previous Store

Coach.  In describing why he terminated Matheny, Snyderworth testified:

> Well, one of the biggest problems that our store had when I got there was the
> replenishment process was broken.  Michelle [Matheny], Jessica [Gillotte] and
> Carol Starnes, they were replenishment–Michelle was considered as layout-filler.
> A lot of the stuff that she did was replenishment.  That part of the store was
> broken. . . .When I say "broken" I mean that a truck comes in.  It would take
> between two and four days to get that truck completely out. . . . After I got there
> we put – fixed the process.  It went out in less than 24 hours, 24 hours or less,
> yeah; that the fillers before my arrival did not meet company expectations.
> Expectations is you get the truck out in 24 hours or less. . . . But the major thing
> that was broken in that store was the replenishment process.

Snyderworth Dep., pp. 48-49.  An assistant manager, Jay Froncek, also testified that the

"[f]reight wasn't coming out fast enough."  [Court Doc. No. 34-15, Deposition of Jay Froncek

("Froncek Dep."), p. 23].

In discussing why he decided to terminate Linda Weir, Snyderworth testified:

> [Weir's] department was a disaster.  Electronics was not a good looking
> department.  It was in my opinion, in the eleven stores that I've been in in my
> career, the worst looking electronics department I have seen. . . . When I got
> there–you know, we're talking two and a half weeks before Christmas, 18
> days–her electronic showcases had nothing in them.  You know, there was a case
> that was empty.  . . . you can't sell merchandise that way.  You know, the layouts
> of the department were not done right.  There was dust all over that department,
> awful. . . . And I found, you know, her attitude was very, very negative. . . . She
> was very negative.  You could tell her something, and it was just like . . . .
> compared to like the others, . . . I wouldn't say she was, you know, willing to
> make the changes to work with us all.

Snyderworth Dep., pp. 51-52.  Snyderworth testified that Weir was "accountable" for the

electronics department.  *Id.* at 57.  Kmart's associate managers, Ms. Koose-Behling and Mr.

Froncek, agreed that stocking of the showcases was a problem in the electronics department.

[Court Doc. No. 34-8, Koose-Behling Dep., p. 18; Froncek Dep., p. 24].  Mr. Froncek testified

that he remembered "showcases being empty" and "cleanliness" being an issue.  Froncek Dep., p.

24.

The Plaintiffs point out that the Ranking Sheet instructs Store Coaches that:

[w]hen evaluating each associate compare his/her last appraisal score with his/her current rating.  If there is a significant change in score, be sure to document in the comment section and/or attached documentation as to why there is a difference, for example: different store, change in leadership, failure to adhere to recently modified standards, etc.  A reduced score in two or more categories without documented explanation is unacceptable.

[Court Doc. No. 34-7].  Plaintiffs note that Snyderworth reduced all of their scores from the

scores given to them by the previous Store Coach in two or more categories without explanation.

Snyderworth admits that he did so.  Snyderworth Dep., pp. 46, 51.  Thus, Snyderworth did not

follow the instructions on the Ranking Sheet.  However, Kmart also points out that although

Snyderworth did not document the reason for the change in scores, the Ranking Sheet includes a

"change in leadership" as a justification for a reduced ranking score.  It is undisputed that

Snyderworth's position as store coach in December of 2006 represented a change in leadership.

Plaintiffs present expert evidence regarding the statistical probability that the four oldest

employees in the store would be terminated based on random chance.  [Court Doc. No. 34-12,

Affidavit of Brian Zinser ("Zinser Aff."), ¶ 3].[1]  Their expert, a professor who teaches statistics,

presented an affidavit providing statistical evidence regarding certain probabilities associated

with the Sault Ste. Marie Kmart store RIF.  The expert states in his affidavit:

---

[1] The Court notes that Plaintiffs' statistical evidence is skewed because Snyderworth did not terminate the four oldest employees in the store.  Beverly Trumbley, at age 55, was the second-oldest employee.  It is undisputed that although Snyderworth initially proposed discharging Trumbley, he decided to discharge Starnes instead based on information provided by his assistant manager.

-6-

> I was asked to calculate the probability that 4 of the 5 people discharged at Kmart out of a total population of 17 people would be the oldest four people at the store. Assuming independence of events, I calculated a hypergeometric probability distribution and found the likelihood of that occurrence is .210084%.

Zinser Aff., ¶ 3.  He concluded that "the likelihood of the outcomes described in each hypothetical are the exact probabilities that each particular outcome will occur in the particular population, assuming no bias based on age or other factors is operating."  *Id.* at ¶ 7.

Other than their statistical evidence, Plaintiffs have presented this Court with no other evidence regarding age discrimination.  For example, Matheny indicates her belief that age discrimination was a factor in her termination based solely on statistical probabilities.  In response to a question regarding why she believed she was laid off because of her age, Matheny testified, "[b]ecause there were five people laid off when I was laid off.  Four of the five were over the age of 50, and I truly believe that that's the reason we were gone, that Kmart was going a different direction, wanted younger people." [Court Doc. No. 33-17, Deposition of Michelle Matheny ("Matheny Dep."), p. 38].  Her evidence of age discrimination consisted of her belief that "Kmart was going a different direction" and the fact that four of the five terminated employees were over 50 years of age.  *Id.*  She speculated that following a merger with another company, Kmart was looking for younger people because the company could pay them less and give them cheaper benefits than older workers.  *Id.* at 39.

Lois Powers similarly indicated her belief that age discrimination played a role in her termination solely because of statistical probabilities.  In her deposition she testified, "[m]aybe it's because out of the five people that he terminated after being there only 18 days and not really knowing us, four of us were over 50.  I mean, you get a younger manager.  They want young

blood."  [Court Doc. No. 33-18, Deposition of Lois Powers ("Powers Dep."), p. 39].  Kmart's

attorney asked Powers specifically if there were "any other reason why [she thought] Brian

[Snyderworth] discriminated against older people."  *Id.* at 41.  Powers responded, "[n]ot that I

can think of right offhand . . . it just seems rather strange that five of us are dismissed and four of

us are over fifty."  *Id.*

Linda Weir also concluded that age discrimination played a role in her termination

because there were "four of us let go that were over 50." [Court Doc. No. 33-19, Deposition of

Linda Weir ("Weir Dep."), p. 5].  She could not understand why she was chosen because she

believed her work record was excellent, so the only reason she could think of for her termination

was her age.  *Id.*  She believes that the statistics alone prove that age discrimination was a factor

in the lay-off decisions.  *Id.* at 6.

In addition to their depositions, the Plaintiffs all present affidavit testimony indicating

their personal disagreement with Snyderworth's assessment of their job performance.  [Court

Doc. No. 34-14, Affidavit of Plaintiff Lois Powers; Court Doc. No. 34-16, Affidavit of Plaintiff

Linda Weir, Court Doc. No. 34-18, Affidavit of Plaintiff Michelle Matheny].

**B.     Procedural Issues**

The Plaintiffs' complaint states that "the subject matter of these claims was raised by

Plaintiffs Michelle Matheny, Lois Powers and Linda Weir in separate claims of discrimination

timely filed with the Equal Employment Opportunity Commission on or before April 10, 2006."

However, the evidence does not demonstrate that the Plaintiffs ever filed discrimination charges

with the Equal Employment Opportunity Commission ("EEOC").

Kmart presents evidence in the form of correspondence from the EEOC that shows that

none of the Plaintiffs completed the necessary requirements for filing a charge of discrimination. For example, correspondence from the EEOC indicates that if Michelle Matheny failed to sign, date and return the draft charge prepared for her, then the charge would be dismissed.  [Court Doc. No. 33-7].  In response to Kmart's request for a charge pertaining to Matheny pursuant to the Freedom of Information Act ("FOIA"), the EEOC responded that no discrimination charge existed for Ms. Matheny.  [Court Doc. No. 33-8].  The EEOC similarly responded that no discrimination charges existed for Ms. Weir and Ms. Powers.  *Id.*

The EEOC informed Ms. Weir in a letter dated February 3, 2006 that the information she had provided to the agency was "not sufficient for filing a charge of discrimination" and that she needed to provide the EEOC with additional information.  [Court Doc. No. 33-9].  On April 18, 2006 the EEOC drafted a letter informing Ms. Weir that the agency had drafted a charge of discrimination on her behalf, but that she needed to review the charge, sign, date, and return it to the EEOC.  [Court Doc. No. 33-9].  The letter informed Ms. Weir that "[a]t this stage, your claim is still considered to be an inquiry with our agency."  *Id.*  The EEOC also informed Ms. Powers in a letter dated May 8, 2006 that her claim was "still considered to [be] an inquiry with our agency."  [Court Doc. No. 33-10].  The agency directed Ms. Powers also to review, sign, and date a draft charge of discrimination and return the charge to the EEOC.  *Id.*  Although the record demonstrates that Ms. Powers signed the charge and had it notarized, there is no evidence that she ever returned it to the EEOC.  *Id.*

Indeed, the Plaintiffs do not dispute Kmart's contention that they never filed completed charges of discrimination with the EEOC.  Plaintiffs' opposition to Kmart's motion for summary judgment simply states, "counsel for Plaint[iffs] offered a stipulation to dismiss the federal claim

based exclusively on the problems with the administrative processing of the claim and without prejudice to the state claim. Defendant has declined. Plaintiff does not address the issue pertaining to the administrative processing of the federal claim for these reasons." [Court Doc. No. 34, p. 15].

## II.    Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether

sufficient evidence has been presented to make the issue of fact a proper jury question, and not to

weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy*

*Street*, 822 F.2d at 1435-36.  If the Court concludes that a fair-minded jury could not return a

verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary

judgment.  *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51

F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## III.    Analysis

## A.    ADEA Claim

The ADEA provides that "[i]t shall be unlawful for an employer– (1) . . . to discharge any

individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. §

623.  The ADEA also requires that:

> No civil action may be commenced by an individual under this section until 60
> days after a charge alleging unlawful discrimination has been filed with the Equal
> Employment Opportunity Commission.  Such a charge shall be filed--
> (1) within 180 days after the alleged unlawful practice occurred; or
> (2) in a case to which section 633(b) of this title applies, within 300 days after the
> alleged unlawful practice occurred, or within 30 days after receipt by the
> individual of notice of termination of proceedings under State law, whichever is
> earlier.

29 U.S.C. § 626(d).  Federal courts have held that the exhaustion of remedies with the EEOC "is

a precondition to suit" for discrimination claims under the ADEA.  *Holtz v. Rockefeller & Co.*,

*Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d

Cir. 2000)); *see also, Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000) (Title VII); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir. 1998) ("right -to-sue letter is merely a condition precedent, and not a jurisdictional requirement to bringing a Title VII action"). As the Sixth Circuit has noted, "[t]he timely filing of a charge of age discrimination with the EEOC is ordinarily a condition precedent to an ADEA lawsuit." *Jackson v. Richards Medical Co.*, 961 F.2d 575, 578 (6th Cir. 1992). Plaintiffs may only raise claims in district court that are reasonably related to the claim raised in an EEOC charge. *Holtz*, 258 F.3d at 83.

In addition, a plaintiff's "[f]ailure to timely exhaust administrative remedies is an appropriate basis for dismissal of an . . . ADEA action." *Hoover v. Timken Co.*, 30 F. App'x. 511, 513 (6th Cir. 2002) (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066 (1979)). Although the "ADEA filing period is more in the nature of a statute of limitations that is subject to equitable modification," Plaintiffs have not just failed to file a timely EEOC charge, they have failed to file an EEOC charge at all. *See Jackson*, 961 F.2d at 578. The reason for the filing of an EEOC charge is give the EEOC the opportunity "to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b); *see also, Jackson*, 961 F.2d at 578.

Because the Plaintiffs have failed to comply with the ADEA's requirement that they file EEOC charges prior to filing an ADEA claim in district court, this Court will **DISMISS** Plaintiffs' ADEA claims.

## B.     Michigan ELCRA Claim

Because this Court has dismissed Plaintiffs' ADEA claims, this Court could decline to

exercise supplemental jurisdiction over Plaintiffs' claims arising under Michigan's ELCRA.

However, Kmart urges this Court not to dismiss Plaintiffs' ELCRA claims without prejudice,

noting that the parties have already expended considerable resources in discovery in this matter

and that Kmart would have to duplicate its efforts if the Plaintiffs were to raise their remaining

claims in state court.  Therefore, this Court will address the merits of Plaintiffs' ELCRA claims.

Michigan's Elliott-Larsen Civil Rights Act states in part:

A employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an
individual with respect to employment, compensation, or a term, condition, or
privilege of employment, because of . . . age . . . .

Mich. Comp. Laws § 37.2202.

Michigan courts analyze claims under the ADEA and the ELCRA in the same way.  *See*

*e.g.*, *Austin v. Fuel Systems, LLC*, 379 F.Supp.2d 884, 900 n.7 (W.D. Mich. 2004).  Michigan

courts use the burden-shifting framework established by the U.S. Supreme Court in the

*McDonnell Douglas Corp. v. Green* case.  *See Town v. Michigan Bell Telephone Co.*, 455 Mich.

688, 695, 568 N.W.2d 64, 67-68 (1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973)).

Under Michigan law the employee must show:

that the employee was (1) a member of a protected class, (2) subject to an adverse
employment action, (3) qualified for the position, and that (4) others, similarly
situated and outside the protected class, were unaffected by the employer's
adverse conduct.  The purpose of the prima facie test is to 1) remove the most
common nondiscriminatory reasons for the employer's action, such as poor
employee performance, and 2) to force the employer to articulate a
nondiscriminatory reason for the discharge.  Once the employer produces
evidence of a nondiscriminatory reason for the discharge, even if that reason later
turns out to be incredible, the presumption of discrimination evaporates. . . . Once
the presumption drops out of the case, the plaintiff retains the ultimate burden of

-13-

> proving discrimination. Plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the discrimination was defendant's true motive in making the adverse employment decision. To prevail, the employee must submit admissible evidence to prove that the employer's nondiscriminatory reason was not the true reason for the discharge and that the plaintiff's age was a motivating factor in the employer's decision. Thus, the employee must prove that the employer's explanation was a pretext for discrimination. . . . We . . . favor an intermediate position. . . . We would hold that when viewed in the light most favorable to the plaintiff, the evidence must create a material issue of fact on which reasonable minds could conclude that the employer's stated reason is a pretext for discrimination for summary judgment to be precluded.

*Town*, 455 Mich. at 696-698, 568 N.W.2d at 68-69. In other words, "[t]he inquiry at this final stage of the *McDonnell Douglas* framework is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision." *Hazle v. Ford Motor Co.*, 464 Mich. 456, 466, 628 N.W.2d 515, 522 (2001). A plaintiff's subjective claims of her own qualifications do not suffice to raise an issue of fact regarding whether a defendant has acted with discriminatory animus. *Id.* at 476, 628 N.W.2d at 528.

In the context of a RIF, "the employee must also present 'sufficient evidence on the ultimate question,' namely, whether the employee's age or sex was a determining factor in the employer's decision to discharge that employee." *Town*, 455 Mich. at 702 (citing *Matras v. Amoco Oil Co.*, 424 Mich. 675, 684, 385 N.W.2d 586 (1986)). In other words, a "layoff in the context of an overall workforce reduction provides a nondiscriminatory explanation for the plaintiff's discharge." *Town*, 455 Mich. at 702; *see also Lytle v. Malady*, 458 Mich. 153, 177, 579 N.W.2d 906, 916 (1998); *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 717, 565 N.W.2d 401, 413 (1997) (noting that "plaintiffs who are discharged during reductions in force

-14-

are required to adduce additional proofs in order to establish discrimination").

In addition, to demonstrate pretext, the "'plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Town*, 455 Mich. at 704, 568 N.W.2d 64 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)). Michigan courts do not engage in second-guessing an employer's business judgment. *Town*, 455 Mich. at 704, 568 N.W.2d 64. *See also, Hazle*, 464 Mich. at 475-76, 628 N.W.2d at 527. Moreover, "unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of age discrimination." *Meagher*, 222 Mich. App. at 712, 565 N.W.2d at 411. Further, in the context of a RIF, "[e]vidence that a competent older employee was terminated and a younger employee was retained, standing alone, is insufficient to establish a prima facie case when the employer reduces his work force because of economic necessity." *Featherly v. Teledyne Indust., Inc.*, 194 Mich. App. 352, 359, 486 N.W.2d 361, 364 (1992).

When reviewing discrimination claims under the ELCRA, "Michigan courts have often resorted to federal precedent for guidance." *Graham v. Ford*, 237 Mich.App. 670, 676, 604 N.W.2d 910 (2000); *see also, Featherly*, 194 Mich. App. at 357-58, 486 N.W.2d at 364; *Matras*, 424 Mich. at 683-85, 385 N.W.2d 586. In *Barnes v. GenCorp., Inc.* the Sixth Circuit held that in a RIF situation a plaintiff "does not make out a prima facie case absent additional, direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." 896 F.2d 1457, 1465 (6th Cir. 1990). Statistics showing significant disparities in ages of those chosen for termination that eliminate the most common nondiscriminatory reasons for the disparity may allow a plaintiff to state a

-15-

prima facie case of discrimination. *Id.* at 1466. Such statistics may be probative of discrimination. *Id.* at 1467. Statistics may in some circumstances provide a rebuttal to a defendant's legitimate nondiscriminatory reason for an adverse action. *Id.* at 1468. However, when a defendant rebuts statistical evidence with evidence that "each plaintiff was less qualified than others occupying comparable positions, the defendants have undercut the importance of the plaintiffs' statistical proof." *Id.* at 1469. At that point, "[u]nless the plaintiffs can show that the defendants' explanations are inherently suspect or can present other direct or circumstantial evidence suggesting that the proffered reasons are not true, then the defendants are entitled to summary judgment." *Id.*

In *Barnes* the Sixth Circuit also noted that while the plaintiffs' expert determined that age discrimination had been proven with statistical certainty, the Court did not believe that conclusion was warranted. *Id.* at 1469 n.21. The Court stated:

> A statistical analysis of a disparity in selection rates can reveal the *probability* that the disparity is merely a random deviation from perfectly equal selection rates. Statistics, however, cannot entirely rule out the possibility that chance caused the disparity. Nor can statistics determine, if chance is an unlikely explanation, whether the more probable cause was intentional discrimination or a legitimate nondiscriminatory factor in the selection process.

*Id.*

Michigan courts have also made clear that "statistical evidence may be used to establish a prima facie case of discrimination and to show that the proffered reasons for a defendant's conduct are pretextual." *Migaldi v. Sherman*, 2000 WL 33419393, No. 212917 (Mich. Ct. App. May 19, 2000) (citing *Dixon v. WW Grainger, Inc.*, 168 Mich. App. 107, 118, 423 N.W.2d 580 (1987)). Under Michigan law statistical evidence using small samples may provide some weak

circumstantial evidence of age discrimination.  *See e.g. Donohue v. Intermodal Transp. Serv., Inc.*, 2005 WL 50185, No. 249700 *3 (Mich. Ct. App. Jan. 11, 2005); *but see, Ehinger v. Univ. of Mich. Bd. of Regents*, 1997 WL 33343826, No. 190492 *1 (Mich. Ct. App. 1997) (noting that "small statistical samples provide little or no probative force to show discrimination").

The Sixth Circuit has also recognized that a small statistical sample is not inherently unreliable.  *See e.g. McCabe v. Champion Int'l Corp.*, 916 F.2d 713, 1990 WL 156104 *5 (6th Cir. 1990).  However, a small statistical sample, combined with no other circumstantial evidence of discriminatory intent may not create an issue of fact regarding whether discrimination motivated an adverse employment decision.  *See e.g., Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943-944 (6th Cir. 1987).

Under the ELCRA, a plaintiff can raise an issue of fact regarding a defendant's purported legitimate non-discriminatory reason by demonstrating that the alleged reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct."  *Moradian v. Semco Energy Gas Co.*, 315 F.Supp.2d 870, 876 (E.D. Mich. 2004) (citing *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)); *see also, Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002).

In this action the Court finds that Plaintiffs have stated a prima facie case of discrimination under the ELCRA.  It is undisputed that the Plaintiffs were over the age of forty, were qualified for their positions at Kmart, suffered the adverse action of being terminated pursuant to a RIF, and that other employees at the Sault Ste. Marie store were unaffected by the RIF.  The addition of Plaintiffs' statistical evidence demonstrating that four of the five persons terminated out of the seventeen total employees were over the age of fifty provides the additional

-17-

evidence needed at the prima facie stage to state a claim of discrimination.  Plaintiffs' expert predicted the likelihood based on chance that four of the five people terminated at the store would be the oldest four people in the store to be .210084%.[2]

Once Plaintiffs raise a prima facie case of discrimination, the burden shifts to Kmart to rebut the presumption of discrimination.  The Court concludes that Kmart has done so.  The evidence is undisputed that Kmart instructed store coaches in Snyderworth's division to conduct a RIF if the number of store employees was deemed too high for the sales volume of the store. Under Michigan law a RIF for economic reasons is a legitimate nondiscrimatory reason for a termination.  *See Town*, 455 Mich. at 702.

The Guidelines and Ranking Sheet were not discriminatory on their face, and they cautioned Store Coaches not to make any decisions for impermissible reasons.  Snyderworth followed the Guidelines and used the employees' prior performance rating, as well as his more recent ratings in the four areas of customer service, teamwork, effectiveness in position, and demonstrated work habits.  Based on Snyderworth's rankings, Plaintiffs all ranked in the bottom five of the seventeen store employees.  Plaintiffs' own chart demonstrates that even before Snyderworth's rankings, Plaintiffs all ranked in the bottom half of the store employees with only three employees ranked below them along with the other two terminated employees.  [Court Doc. No. 34, p. 3].

_____

[2] As noted *supra* in note 1, the Court notes that this percentage is skewed because Snyderworth did not terminate the four oldest people in the store.  It is undisputed that Snyderworth did not terminate Beverly Trumbley, who at 55 was the second oldest employee in the store.  Thus, Plaintiffs' expert's calculations are based on inaccurate data; however, this Court agrees that in terminating four of the five oldest employees in the store, Plaintiffs raise weak circumstantial evidence of discrimination sufficient to state a prima facie case.

Plaintiffs complain that Snyderworth ranked them lower than their prior ratings by two or more points in violation of the directions provided on the Ranking Sheet.  Snyderworth admits that he lowered Plaintiffs' scores without noting an explanation on the sheet.  However, Kmart points out that a "change in leadership" was noted on the Ranking Sheet as a specific reason for a reduction in a prior performance appraisal score.  It is undisputed that Snyderworth represented a change in leadership at the Sault Ste. Marie store.

In addition, Kmart provided evidence regarding why Snyderworth chose to terminate each of the three Plaintiffs.  Snyderworth perceived that Lois Powers could not adequately manage the front of the store when it got busy, and she did not always keep the checking lanes clean and stocked.  The department of replenishment, in which Michelle Matheny worked, was "broken." Snyderworth Dep., pp. 48-49.  The assistant manager agreed that the freight system in the replenishment department was not working as it should.  Froncek Dep., p. 23.  Indeed, Jessica Gillotte and Carol Starnes, the two other employees who were terminated, also worked in the replenishment department.

Finally, the evidence demonstrated that Snyderworth believed Linda Weir failed to stock her showcases adequately and failed to keep the electronics department free of dust.  His assistant managers agreed with his assessment.  Koose-Behling Dep., p. 18; Froncek Dep., p. 24. Snyderworth also believed Ms. Weir had a negative attitude.  The evidence further demonstrates that Ms. Koose-Behling disagreed with Snyderworth's initial decision to terminate Beverly Trumbley, but not any of the three Plaintiffs.  Koose-Behling Dep., p. 10-12; Snyderworth Dep., pp. 26-29.  There is no evidence that Mr. Froncek disagreed with Snyderworth's decisions. Plaintiffs also do not demonstrate that Snyderworth even knew their ages when he terminated

-19-

them, and he testified that he did not know their ages.  Snyderworth Dep., p. 65.

Based on Kmart's legitimate nondiscriminatory reasons for terminating Plaintiffs, the presumption of discrimination evaporates.  *See Town*, 455 Mich. at 696-98; 568 N.W.2d at 68-69.  Plaintiffs must come forward with evidence, which may include evidence used to establish the prima facie case, to demonstrate that age was a motivating factor in Snyderworth's decision.  *Id.*  Plaintiffs have come forward with no evidence in addition to the statistical evidence used to demonstrate their prima facie case.  The Court concludes that, based on the facts present in this case, the Plaintiffs' statistical evidence is not sufficient to raise a genuine issue of material fact regarding whether Plaintiffs' age was a motivating factor for their termination.  Plaintiffs' expert states a probability based on random chance, but fails to take into consideration any legitimate factors for Plaintiffs' termination, such as job performance.  Plaintiffs have no evidence of discriminatory comments or other circumstances supporting their theory of age discrimination.  Plaintiffs merely state their own subjective beliefs that they performed their jobs well and question Snyderworth's business judgment.  However, their subjective beliefs do not create a genuine issue of material fact that *age* played a role in Snyderworth's decisions.  "The factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  *Town*, 455 Mich. at 704, 568 N.W.2d 64.  Since Plaintiffs have presented no evidence in addition to their statistics and their own speculative opinions to demonstrate that Snyderworth was motivated by age discrimination in terminating them, Kmart's motion for summary judgment on Plaintiffs' ELCRA claims will be **GRANTED**.

To the extent that Plaintiffs attempt to raise a disparate impact discrimination claim, this

claim must also fail.  Although Michigan courts recognize a disparate impact theory of discrimination, such a claim "requires a showing that an otherwise facially neutral employment policy has a discriminatory effect on members of a protected class."  *Stephens v. Electronic Data Sys. Corp.*, 2007 WL 33529740, No. 210060 *1 (Mich. App. Feb. 25, 2007) (citing *Meagher*, 222 Mich. App. at 708-09, 565 N.W.2d 401; *Farmington Educ. Ass'n v. Farmington Sch. Dist.*, 133 Mich. App. 566, 351 N.W.2d 242 (1984)).

In this case Plaintiffs do not demonstrate that the Guidelines or the Ranking Sheet had a disparate impact upon older workers generally.  They argue instead that Snyderworth applied the Guidelines in a discriminatory manner.  Their claim is thus one for disparate treatment discrimination only.

## IV.    Conclusion

For the reasons stated *supra*, Defendant Kmart's motion for summary judgment will be **GRANTED**.  Plaintiffs' claims under the ADEA and the ELCRA will be dismissed with prejudice.

A separate order will enter.

Date: 6/26/07                                    /s/ R. Allan Edgar
                                                R. ALLAN EDGAR
                                        UNITED STATES DISTRICT JUDGE