UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHELLE MATHENY, LINDA
WEIR and LOIS POWERS,

    Plaintiffs,

v.                                                                    Case No. 2:06-cv-00173
                                                                    HON. R. ALLAN EDGAR

KMART CORPORATION, a Michigan
corporation

    Defendant.
_____/

**MEMORANDUM**

Plaintiffs Michelle Matheny, Linda Weir, and Lois Powers have brought this action challenging their discharge due to a reduction-in-force ("RIF") from Defendant Kmart Corporation ("Kmart") pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101 *et seq.* ("ELCRA").  Kmart filed a motion for summary judgment in this court on April 26, 2007.  [Court Doc. No. 33].  Plaintiffs responded to the motion on May 23, 2007.  [Court Doc. No. 34].  Kmart filed its reply on June 6, 2007.  [Court Doc. No. 35].  This Court granted Kmart's motion and dismissed Plaintiffs' claims under both the ADEA and the ELCRA.  Plaintiffs now move this court for reconsideration of its order granting the motion for summary judgment.

        I.        **Standard of Review**

This court has previously explained the standard of review for a motion for reconsideration pursuant to Local Rule 7.4:

> To prevail on a motion for reconsideration, the movant must "not only demonstrate a palpable defect by which the Court and the parties have been misled, but [must] also show that a different disposition of the case must result from a correction thereof." LcivR 7.4(a). Moreover, a motion for reconsideration may not be used to raise issues that could have been raised in the previous motion, or to introduce evidence which could have been proffered during the pendency of a summary judgment motion.

*Crider v. Highmark Life Ins. Co.*, 458 F.Supp.2d 487, 516 (W.D. Mich. 2006) (quoting *Aero-Motive Co. v. Great Am. Ins.*, 302 F.Supp.2d 738, 740 (W.D. Mich. 2003)). A "party moving for reconsideration pursuant to Local Rule 7.4(a) 'bears a heavy burden.'" *Krygoski Const. Co., Inc. v. City of Menominee*, 2006 WL 2092412, No. 2:04cv76 (W.D. Mich. July 26, 2006) (quoting *Wrench LLC v. Taco Bell Corp.*, 36 F.Supp.2d 787, 789 (W.D. Mich. 1998)).

In addition, if a party files a motion for reconsideration within ten days of entry of the order or judgment, the Sixth Circuit has instructed courts to review such a motion as a motion to alter or amend the judgment pursuant to Rule 59(e). *See Inge v. Rock Financial Corp.*, 281 F.3d 613, 617 (6th Cir. 2002). A court may grant a motion to alter or amend a judgment for the following reasons: (1) a clear error of law exists; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) to prevent manifest injustice. *GenCorp, Inc. v. American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

**II.    Analysis**

**A.    Plaintiffs' Arguments**

Plaintiffs complain that this Court failed to provide them with oral argument and did not allow them to file a sur-reply to Kmart's reply brief. Local Rule 7.2(d) provides that "[i]n its discretion, the Court may schedule oral argument or may dispose of the motion without argument at the end of the briefing schedule." E.D. Mich. Loc. R. 7.2(d). This court determined that it

would not benefit from oral argument, and in its discretion, it disposed of the motion for summary judgment without oral argument in accordance with the local rules.

Further, Local Rule 7.2(c) provides that following a party's reply brief on a dispositive motion, the "Court may permit or require further briefing." E.D. Mich. Loc. R. 7.2(c). Kmart filed its reply brief on June 6, 2007. [Court Doc. No. 35]. This court did not issue its memorandum and order on the motion until June 26, 2007. [Court Doc. No. 37]. At no time during that 20 day time period, 6 days longer than that provided for filing a reply brief, did Plaintiffs file a motion requesting to respond to issues raised in Kmart's reply brief.

In their motion for reconsideration, Plaintiffs fail to cite to the standards for reconsideration or the standards for a motion to alter or amend judgment. However, they raise four main arguments. They assert that this court: (1) made an improper finding of fact that Plaintiffs' statistics were skewed; (2) made an improper finding of fact that Snyderworth's changes to the Plaintiffs' evaluation scores were the result of a "change of leadership"; (3) made an improper finding of fact that Kmart's assistant managers agreed with Snyderworth's decisions regarding Plaintiffs' terminations; and (4) Snyderworth's score reductions were not supported by the evidence, thus the court erred in finding no evidence of pretext.

Plaintiffs' first argument suggests that this Court erred in finding that Plaintiffs' statistics were skewed in favor of the Plaintiffs. Plaintiffs' expert conducted a statistical analysis that assumed that the four oldest employees in the pool of seventeen employees were in the group of five who were terminated. *See* [Court Doc. No. 34-12]. The expert affidavit indicates that he "was asked to calculate the probability that 4 of the 5 people discharged at Kmart out of the total population of 17 people would be the oldest four people in the store." *Id.* at ¶ 3. However, this

is not what happened. Plaintiffs rely heavily on the fact that Snyderworth initially suggested that Kmart terminate Beverly Trumbley, a 55-year-old employee. After discussing the issue with his assistant managers, however, Snyderworth decided to terminate a 52-year-old employee, Carol Starnes, instead. Plaintiffs admit they based their statistical analysis on Snyderworth's preliminary list and not on the list of employees actually terminated. This has skewed their statistics.

     A potential termination is not an adverse action under ADEA or the ELCRA; a termination is. Since Kmart did not terminate Beverly Trumbley, it is not reliable evidence to include her as a terminated employee in any statistical analysis because she did not suffer any adverse action that would be actionable under the ADEA and the ELCRA. This is the point Plaintiffs do not appear to understand. Although Snyderworth may have initially considered Trumbley for termination, the key fact is that he did not terminate her. Plaintiffs' statistical analysis thus rests on a flawed assumption of an outcome that did not occur. Nor does Snyderworth's preliminary decision to terminate Trumbley manifest discriminatory intent. Snyderworth changed his mind, and the evidence indicates he did not even know the ages of the Plaintiffs when he terminated them.

     Moreover, as this court mentioned in its initial memorandum, Plaintiffs' statistics could still demonstrate that four of the five employees terminated were in their fifties and were among the five oldest employees in the store. Thus, although Plaintiffs' statistics are skewed, any statistics based on the actual employment terminations would still demonstrate that four of the five oldest employees were terminated, which might or might not have been statistically significant.

Even if the court erred in its determination that Plaintiffs' statistics are skewed in their favor, this fact is immaterial. The court found that Plaintiffs' statistics demonstrating the unlikelihood that four of the five oldest employees would be selected for termination based on chance created a prima facie case of discrimination. However, the court concluded that Plaintiffs could not rest on their statistics alone to demonstrate a finding of pretext. Plaintiffs failed to provide this court with sufficient evidence *beyond their statistics* to demonstrate that *age* was a motivating factor behind their terminations.

Plaintiffs further argue that the court erred in finding that the change in Plaintiffs' evaluation scores was the result of a change in leadership. Plaintiffs argue that Kmart raised the argument pertaining to a change in leadership for the first time in its reply briefing. Although a party cannot raise new issues in a reply brief, the Sixth Circuit has clarified that a party may respond to arguments made in a response brief. *See e.g., United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002).

In response to Kmart's motion for summary judgment, Plaintiffs argued that Snyderworth failed to follow company policy by downgrading the Plaintiffs in their evaluations without explanation. [Court Doc. No. 34, pp. 4, 20]. Because Plaintiffs alleged that Snyderworth violated company policy in terminating Plaintiffs, Kmart appropriately responded to that argument. It merely pointed out what Plaintiffs' own exhibit demonstrated, that a "change in leadership" was included on the evaluation guidelines as a possible reason for a significant change in an evaluation. [Court Doc. No. 34-7]. Thus, Kmart replied to Plaintiffs' argument in an appropriate way. Plaintiffs do not contend that Snyderworth did not represent a change in leadership; thus, it is undisputed that although Snyderworth did not state the reasons for the

significant changes in Plaintiffs' evaluations, a "change in leadership" occurred, which was a possible reason for a significant change in evaluation score listed on Kmart's evaluation guidelines. Plaintiffs' argument regarding the Court's alleged improper finding of fact is without merit.

Plaintiffs also argue that this court made an improper finding of fact that the assistant managers agreed with Snyderworth's choices for the reduction in force. Even assuming that Plaintiffs are correct on this evidentiary point, this court's analysis does not change. The court has reviewed its memorandum, and its background facts state the evidence that Ms. Koose-Behling disagreed with Snyderworth's selection of Trumbley for termination and no evidence existed that Mr. Froncek disagreed with Snyderworth's decisions. *See* [Court Doc. Not. 37, pp. 3-4, 19]. Although there may not be any direct evidence that the assistant managers agreed with Snyderworth's decisions regarding the Plaintiffs, there is evidence that Snyderworth discussed the reduction in force with both managers, and one assistant manager objected to terminating Beverly Trumbley. There is no evidence that either manager *disagreed* with Snyderworth's decision to terminate the Plaintiffs. The lack of such evidence is relevant to Plaintiffs' claims. Because one assistant manager remembers disagreeing with Snyderworth regarding Beverly Trumbley's proposed termination, but not with the termination of Plaintiffs, the court can make a reasonable inference that the assistant manager did not feel as strongly about not terminating Plaintiffs. Plaintiffs' alleged error does not meet the high standard under Local Rule 7.4 of demonstrating a "palpable defect" that should change the outcome in the case. E.D. Mich. Loc. R. 7.4(a).

Plaintiffs emphasize the fact that Snyderworth reduced their evaluation scores. However,

Plaintiffs' own chart demonstrates that Michelle Matheny was tied with two other employees for fourth lowest-ranked employee even *before* Snyderworth arrived at the store. Linda Weir and Lois Powers ranked only one point above Michelle Matheny. Plaintiffs all had scores within the bottom four scores of all the employees at the store, and they were all ranked within the bottom half of the seventeen employees at the Sault Ste. Marie Kmart before Snyderworth arrived. Thus, their claims that Snyderworth was completely unfair in terminating them rings hollow since Matheny was tied with two other employees for the fourth and fifth worst ranking, and Powers and Weir were ranked one number above Matheny before Snyderworth's arrival.

  Finally, Plaintiffs complain that evidence exists in the record to disbelieve Snyderworth's legitimate nondiscriminatory reasons for their termination. It is undisputed that Snyderworth had to terminate five employees due to the RIF. Thus, Snyderworth necessarily had to choose to terminate employees who were all performing their jobs in a competent manner. This fact forced him to make hard decisions. Plaintiffs have failed to demonstrate that other employees' performance was undisputedly worse than their own; Plaintiffs' own evidence shows that Plaintiffs were ranked in the bottom eight store employees *before* Snyderworth's arrival.

  Plaintiffs dispute the truthfulness of a reason Snyderworth gave for terminating Powers because he allegedly complimented her on keeping the checking lanes clean. However, Plaintiffs ignore Snyderworth's other reasons for terminating Powers, including her inability to keep the checking lanes moving when the store was busy. Further, it is undisputed Snyderworth had to terminate five competent employees. He chose Powers, and Plaintiffs present no evidence demonstrating that he was motivated by her age in doing so.

  Plaintiffs complain that Snyderworth terminated Matheny even though, according to

Plaintiffs, she did not work in the replenishment department.  However, Matheny clearly worked the night shift when Kmart was closed.  Her job title in her evaluation, although somewhat illegible, states that she was a "Night Replenisher."  [Court Doc. No. 34-11, p. 28].  In her own words, Matheny "stock[ed] the floor from the backroom."  [Court Doc. No. 34-18, Affidavit of Michelle Matheny, ¶ 2].  Matheny's separation report listed her position as "KRS Night Filler," and Snyderworth testified that Matheny was a "layout-filler" and that "[a] lot of the stuff that she did was replenishment."  [Court Doc. Nos. 33-20, 34-6, Deposition of Brian Snyderworth ("Snyderworth Dep."), pp. 48-49; 33-6].  Matheny's argument that she was not part of the broken replenishment department appears disingenuous when she clearly worked the night shift when customers were not at the store and when Kmart's freight trucks were unloaded.  Although her job may not have been specifically to unload the trucks, Snyderworth's deposition testimony made clear that Matheny's job was closely related to the replenishment and freight unloading processes.  Snyderworth Dep., pp. 48-49.  Moreover, Plaintiffs' own chart demonstrates that Matheny was tied with two other employees for fourth-worst employee in the store even before Snyderworth took over as Store Coach.  [Court Doc. No. 34, p. 3].  It is no surprise that Snyderworth terminated her.

 Plaintiffs allege that Snyderworth improperly relied on Weir's "negative attitude," a subjective opinion when Kmart allegedly requested Store Coaches to rely on objective criteria.  However, the evidence demonstrated that Weir had problems keeping her showcases full and her department clean.  Snyderworth called her department a "disaster" and "the worst looking electronics department" he had seen in eleven years.  Snyderworth Dep., pp. 51-52.  Moreover, all of the evaluation criteria–customer service, teamwork, effectiveness in position, and

demonstrated work habits–are subjective criteria. Snyderworth clearly found that Weir's attitude greatly affected her teamwork, as well as her effectiveness in her position and customer service. *See id.* These were the criteria Kmart expected Snyderworth to assess when choosing between competent employees to terminate in a RIF. Thus, Weir's negative attitude related directly to the specific criteria relevant to the evaluation decisions.

Even if Plaintiffs are correct in alleging that Snyderworth's reasons for their termination were mistaken or unfair, the fact remains that Snyderworth had to terminate some employees. Further, unfair or mistaken reasons for termination do not create an issue of fact regarding pretext, nor do subjective opinions based on job performance. *See Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 695, 704, 568 N.W.2d 64, 67-68 (1997). At the pretext stage of the analysis, Plaintiffs bear the burden of demonstrating that *age* was a motivating factor for their terminations. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 628 N.W.2d 515, 522 (2001). Plaintiffs failed to do this. They do not even demonstrate that Snyderworth knew their ages when he terminated them, much less that age had anything to do with the termination. As explained in this court's memorandum, Plaintiffs' small-sample statistics only, at best, help them demonstrate a prima facie case. Their subsequent evidence that Snyderworth's decisions were unfair or mistaken do "not afford plaintiff[s] a remedy unless the unfair treatment was because of age discrimination." *Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 717, 565 N.W.2d 401, 413 (1997).

Plaintiffs have failed to tie their four alleged errors to the standards required under Fed. R. Civ. P. 59 or under Local Rule 7.4(a). Plaintiffs assert no palpable defect that should change the outcome in this case, nor do they suggest new evidence, an error of law, a change in law, or a

manifest injustice that should require this court to alter or amend the judgment. Their failure to do so dooms their request for reconsideration. Their motion will be **DENIED**.

### II. Kmart's Request for Attorneys' Fees

Kmart filed its response to Plaintiffs' motion for reconsideration on its own initiative before this court requested it to do so. Local Rule 7.4(b) states that "[n]o answer to a motion for reconsideration will be allowed unless requested by the Court, but a motion for reconsideration will ordinarily not be granted in the absence of such request." W.D. Mich. Loc. R. 7.4(b). Kmart requested this court's permission to file a response, which this court gave.

Kmart now seeks its attorney fees for its time spent responding to Plaintiffs' motion for reconsideration. Kmart was not required to respond to Plaintiffs' motion for reconsideration; therefore, it did not have to expend any attorney resources in a response, but it chose to do so. This court will therefore **DENY** Kmart's request for attorneys' fees.

If Kmart chooses, it may file a motion for attorneys' fees spent on its response pursuant to Fed. R. Civ. P. 11(c)(1)(A). Such a motion should be filed separately from "other motions or requests." Fed. R. Civ. P. 11(c)(1)(A). Kmart must also demonstrate that it has fulfilled the other requirements of Fed. R. Civ. P. 11(c)(1)(A) in any motion for sanctions that it chooses to file.

### III. Conclusion

For the reasons stated *supra*, Plaintiffs' motion for reconsideration will be **DENIED**.

Kmart's request for attorneys' fees will be **DENIED**.  A separate order will enter.


Date: 7/23/07

                         /s/ R. Allan Edgar
                         R. ALLAN EDGAR
                   UNITED STATES DISTRICT JUDGE